This is a video of the Skullcandy v. Skullcandy, Inc.  The last case this morning is CSR v. Skullcandy, 2014, 1108-09 and 1138, Mr. Ostroff. Thank you, Your Honor. May it please the Court. With respect to the 948 patent, the Board made four primary errors. I'm going to focus on the first two given the time constraints this morning. The Board erred in not construing the critical phrase threshold value. Even if the Board can be said to have implicitly construed the term, the Board failed to apply the broadest reasonable construction to threshold value. There's also an issue with respect to the 090 patent, and I will probably get to that in my rebuttal time. Let me talk about the first issue, which is the failure to construe threshold value. Despite a clear mandate from this Court in the Gector case... Let me just point out, rebuttal time is rebuttal. I understand that, but there's a cross appeal here, Your Honor, so that's what I want to focus on. Despite a clear mandate from this Court in Gector that do so, the Board did not construe the term threshold value. And most, the Board said, CSR's proposed construction was simply wrong. And this has two practical effects. It deprives this Court of the information... The construction that you offered to the Board was a receivable signal. It was. I can tell you exactly what it was, Your Honor. It was a signal that has been received, detected, and processed by the coupling device. And it was something along those lines that's detailed in our briefs as well. This has two practical effects, and I found myself, frankly, jealous of the prior two arguments where the discussion was what did the term mean and what did the Court do, because it did nothing here. Having done nothing, the Board deprives this Court of the information it needs to assess the decisions below. And it makes it impossible to do a complete analysis of the prior art to determine if the art reads on the patent. Specifically, we need a construction of threshold value so we know what the term means. And when we know what the term means, we can look to Smith, which is the primary reference here, to see if the threshold value is present, although obviously using different words. Then we can do our anticipation analysis. This is what this Court has directed in cases like T.I. Automotive. Validity is a two-step process. Construe the claims and determine whether the claims are met by the prior art. Now, Skullcandy uses or points to four cases in particular to say that an implicit construction is enough. Three of those cases, Bayer, Riox, and Vivid, are frankly not even a little relevant to this situation. And Bayer, if you were to read the district court's opinion, and all three are district court opinions, the entire opinion is about claims construction. There isn't anything else that the issue is about. Riox, the same. Vivid's a little different. The issue was whether or not discovery was permitted in claims construction. The issue in those cases was the standard that this Court, the Federal Circuit, should use in its analysis, not the standard that the Board should use. The closer case, I would say, is Hyatt. But at least in Hyatt, this Court found that based on the work below by the examiner and then by the Board, this Court could figure out what the Board had meant. In particular, the Court found that it could determine from the work done below that the key term at issue, their sharing, could be construed to mean undergoing comment. Indeed, in the Hyatt case, this Court said and recognized that the Board, used the word, interpreted the claims. None of that happened here. We have no construction at the moment of threshold value. The Board, in this case, essentially just said, you guys are wrong. Smith doesn't use the words threshold value, and not using the words threshold value, we can't use it as a piece of anticipatory argument. Even in Hyatt, Hyatt cites Gector to say the Board must… What's your support for the notion that your construction threshold value is meaning a received signal is correct? So that goes to the second issue, which is the broadest reasonable construction issue. It has to be that, because if it is not that, the problem posed by the patent is not solved, which is interrupting the music when a phone call is received. That is the central focus of the entire patent. If the received signal does not interrupt the music, the problem posed by the patent is not solved. And I can get to that in some detail here. And we did present evidence of this to the panel, I'm sorry, to the examiner. So the examiner did find a construction that was reversed ultimately by the Board and is being appealed here today. So let's focus on the broadest reasonable construction. The Board essentially excused itself from applying the broadest reasonable construction by concluding that the words threshold value do not appear in Smith, and since they don't appear in Smith, Smith doesn't disclose the threshold value. That is the entirety of the Board's analysis. And on request for rehearing, the Court took it a little bit differently and said the Board concluded that Smith does not disclose the threshold value since it merely discloses interrupting music when a phone call is received. And to Judge Dyker's question, the problem that the 948 seeks to solve is music playing, makes it difficult to hear the phone ring. And what is needed, as the patent says in the specifications, is the ability for users to accept and place calls while listening to music. That is the entirety of the issue. Thanks. Smith discloses, and this is at the appendix at 1179, giving priority to an audio signal coming in from the phone by pausing the other device. And the wireless communication adapter recognizes a call coming in, so the signal must have some non-zero value at which it is received. The construction specifically that we're looking for is one that we put before the examiner and then ultimately the Board. The construction must be broad enough to include any non-zero value sufficient for the signal to be received. Otherwise, as I said before in response to your question, Judge Dyker, the problem posed by the patent is not solved because you cannot hear the phone when the music is playing. This patent is only about that. So it's important to understand that the signal carries some measurable level of strength. When the level is high enough to trip the threshold value, that triggers the phone taking priority over the music. And I would say that Skullcandy's argument in response is essentially, by accepting our construction or our view, you read out the term threshold value. But I would put it to the court, and I say we do this in our brief. If you remove the phrase from the clause of the patent, and the patent is a part I'm specifically referring to is A70, column 655 to 64. This is the first part of claim one. Just remove the phrase upon reaching a threshold value, which is essentially what Skullcandy has said we've done here. The patent takes on potentially a whole new meaning. You could substitute in, for example, interrupt the first audio signal when a Bluetooth signal is received. When the second signal is received, it could mean many other things. What it doesn't mean is, excuse me, what is critical here is that the threshold value be any receipt of the signal. The other argument I say primarily that their brief on this point of threshold value is focused on, is this fiction of the multiple embodiments. Skullcandy seems to suggest in their brief that there are multiple embodiments in this patent. But in fact, there is only one. It is referenced once. It's in the summary of the invention, and it is the one that is laid out specifically in the claim. And the fact that somebody could use the phrase selected embodiments in the patent, but never actually indicate any other embodiment other than the one identified, does not suggest to me that in fact there are multiple embodiments. And as a result of there being multiple embodiments, threshold value must have some meaning other than the one we have suggested. The only other alternative in the patent at all relates to a manual switch or a mixer, which is clearly not what is indicated by Claim 1 of the patent. I should probably spend a minute while I have it on the 090 issue. The only issue that we're appealing on the 090 is Claim 5. And the issue there is I think that the board missed one of the elements of the Smith embodiment. In fact, I believe it is Claim 14 of Smith, we believe, addresses directly Claim 5 of the underlying patent. Let me point out what you already know. Yes. Namely that what a reference teaches is a question of fact. And on that, the Patent Office is owed a very great deference. I would agree with that, Judge Lurie. And what I would suggest to you is that the Patent Office made lots of findings here. And in the evidence, we can find support with respect to all of those findings in the 090, whether or not the court or the board cited them or not. Except that one. I would agree, but it's clear on the face of the Smith reference that Claim 14 discloses what we believe is the claim. And if that requires this to be remanded and taken a look at again, I think that's potentially the best outcome on that claim. But it's clearly in there. And given the number of issues coming back the other way, I feel like we should reserve the rest of my time for… All right, we will do that. Mr. Castaneous, do you want to reserve a couple of minutes? I think, Your Honor, we've reserved three for rebuttal on our Frost appeal. May it please the Court, let me start with the 948 patent and the threshold value issue. So the board did not construe threshold value, right? The board gave a sufficient construction under the Hyatt decision to threshold value. What do you understand the construction that they gave? What I understand the construction to be is that it is a value distinct from the mere presence of a signal. If you look, for example… Okay, so what do you think it means? I think it means a value distinct from the presence of a signal, but I can also point you to the specific construction that Skullcandy offered, and that is that it is a value encoded in the audio signal that, when reached, the coupling device causes the second audio signal to interrupt the first audio signal, and that's at A570 of the record, Judge Dike. The point of Hyatt… Well, so the board didn't address that construction, right? No, the board didn't address our construction, no, but what it did do, Your Honor, and again, consistent with the Hyatt decision that my friend here was beginning to mention, was to say that it rejected the notion that the term threshold value could mean the same as, as you put it, received signal. And why is that? Well, it's because threshold value is different than second audio signal. In fact, if you look at the coupling device limitation… But it seems to me very difficult to make sense out of this without knowing what threshold value means. And looking at Smith in the light of what it means, as opposed to simply saying, well, it doesn't mean this. That's not a very complete explanation. The board could have written more, but let me make absolutely clear what this issue turns on. The anticipation argument that was made against the 948 patent by CSR was, the fact that this receives a signal means that it has a threshold value. That's it. If you look at the coupling device limitation that appears in Claim 1… Yeah, but the problem, as I see it, is that the specification really doesn't, it mentions the word threshold value once, but where's the support for your construction in the specification? That is, that there's an encoded signal, and when it reaches the encoded signal level, that it then cuts off the music. I don't see that. I don't see that in the specification, so where does that construction come from? Well, the construction certainly comes from the language of the claims itself, because as this court has recognized in cases like Abbott Diabetes Care and the other cases, some of which we've cited at page 23 of our red brief, a broadest reasonable construction, which is, of course, the standard that the board uses here, can't be one that is contrary to the claims. And what the construction that was being offered for anticipation, and the only construction that was offered for anticipation by CSR in this case, was a construction that would have read threshold value out of the claims entirely. The board didn't have to go any further than to say, this is not a threshold value, because there's no threshold value in SMIP apart from a signal, and that's effectively what the board said at pages 13 and 14 in responding to the request for reconsideration. What I'm looking for is something in the specification or the claims that supports the construction that you gave to them. Where do I find that, that it's talking about an encoded value? Well, to be fair, we're not up here defending CSR's, I'm sorry, defending Skullcandy's construction. Well, you are to the extent that I'm asking. And I'll certainly answer that to the extent that I can. I think that was based, in fact, on the language of the claims as well as the specification language, limited though it is, that is provided with regard to threshold value. But I think the plain language does answer this. The notion is that there is a second audio signal that is characterized by a threshold value. So we know from that wording itself that the signal itself is characterized by, but is different from, a threshold value. But why does that mean that it's an encoded value in the signal? Well, and we might be wrong on that. And if we are wrong on that, then it doesn't affect this appeal. Because the fact of the matter is the question that was before the board is, is this anticipated? And the only anticipation argument was signal equals threshold, reception of signal equals threshold value. That's anticipation. That's the only argument that was offered. The board rejected that because it said threshold value and signal are different things. That's all the board had to do. And it's very clear in the opinion. And I must add that since the holding of Hyatt is that a board decision has to be sufficient to enable meaningful judicial review, I think the parties have been able to join the issue on this argument pretty rigorously. The argument we offer is very simple. It is not reasonable to read threshold values meaning the same thing as signal because otherwise you can just cross out the language with the second audio signal is characterized by a threshold value and you can also cross out, as my friend said, upon reaching the threshold value. And you don't get to a meaning of the claim that is any different. Unless there are further questions on the threshold value issue, let me turn to the 090 patent. And I'll treat both the answer to CSR's appeal as well as our argument on the cross appeal together. Because I think if we were to prevail on our appeal, then it really does also that in and of itself will dispose of the argument with regard to Claim 5. The basic problem in the board's decision with regard to the 090 patent is this. It picked and chose uncombinable combinations of embodiments out of the Smith patent. And remarkably, this isn't an obviousness case. This is an anticipation case. It took Figure 5. What is Figure 5? It's a human figure wearing headphones listening to something on the stereo. And then it took a portion of Figure 6. Well, what's Figure 6 about? Well, Figure 6 is about taking a CD player, a portable one perhaps, and plugging it in and playing it through your legacy hi-fi sitting on the counter. And it's really remarkable that the board's decision with regard to the 090 patent was in large part based on its notion that this disclosed a portable embodiment. when part of what is said to be the anticipating part of the invention is hooked up to a countertop hi-fi. And that's somehow portable. And to think about someone listening to this while traveling, while exercising, and that sort of thing, while carrying their hi-fis is pretty funny. But it was a stretch in understanding what Smith discloses and what 090 claims. Remember, the 090 patent is directed to an entire portable apparatus comprising. And that portable apparatus has to comprise all of the other, at least, all of the other limitations that are set forth in the claim. And one of the things that it has to comprise is the first or second electrical connectors. This goes to my friend's cross-appeal. Those are the additional limitations of Claim 5. Well, if you look at the drawing that they've made at page 41, and what they say is the coupling, 41 of our red brief, excuse me, and it's at 1325 of the record. If you look at what they've circled with regard to what the coupling device is, their coupling device includes this thing, which is physically attached to the legacy hi-fi unit sitting there on the countertop. That's not a, quote, portable apparatus comprising. That's where the board fundamentally missed the vote with regard to the 090 anticipation analysis. The bottom line is this. Although we've made other arguments with respect to 090, including the fact that we think the board switched the burden of proof and put that on us, that at most would get us a remand. But I think that it's clear from the argument that I've just made to you that Smith does not disclose all the limitations of 090 for purposes of anticipation. You're in line particularly on the portability requirement. Particularly, but not exclusively. There's also the substantially arbitrarily selectable part, which really you're talking about having sort of a universal adapter to make it really easy to use different devices here. And Smith, in our view, discloses the exact opposite of that. They say that you've got to know the specific device and attach it to the specific connector that fits the device. So we think that, again, teaching away is not relevant to the anticipation context, but Smith is so far afield that it actually would teach away if that were the issue. One last point. A point that was raised by CSR with regard to a potential waiver with regard to Claim 36 because they say they had an obviousness rejection. The swift decision in Enright-Robertson answers that, I believe, because the obviousness rejection was on exactly the same ground as the anticipation rejection. And so there was no point in doing a further obviousness analysis in our brief. It hasn't been waived. Unless the Court has further questions, I'll return on rebuttal, but we'd urge that on CSR's appeal that the judgment be affirmed. Thank you, Mr. Custanius. Mr. Osterl? Thank you, Your Honor. Briefly on this idea of what I like to think of as the cobbling together element, which my friend was just speaking of, Smith really talks about a central embodiment, and that embodiment is set out in, I think it's Figure 1 of Smith, which is at A1163. I think of this, for lack of a better analogy, as a Swiss army knife, and their argument essentially is that you don't recite the toothpick next to the screwdriver. You recite the blade next to the toothpick. But in essence, the point being that everything in Smith is disclosed in this one central embodiment. There is no attempt by us to cobble together different pieces for anticipation. All of the pieces are there. They're described in different ways throughout the Smith reference, but all the pieces are in one place in the central embodiment. So I don't really believe that there's any cobbling together at all, and the cases they cite with respect to cobbling together are, none of them relate specifically to the kind of question we have here. The portability issue is the last issue I want to raise. What needs to be portable here is the apparatus, not the hi-fi device. So although the examiner may have said, yeah, it's portable because you can deliver it into your house, the hi-fi device, I agree that that seems like a strange construction of portable. What the portability issue here, though, is the device itself, the adapter portable, and clearly the board came to the conclusion that it was, and it did so by looking at the specifications in Smith and in other places where it clearly is portable. I believe that's all I have to say in respect. Unless your honors have any additional questions, I will sit down. Thank you, Mr. Oster. Mr. Oster, Mr. Samias, for some rebuttal time on the 090 patent. I think the only thing I heard from my friend had to do with portability and picking and choosing, so let me just make two points. Figure 5 and figure 6. Figure 5 is the figure wearing headphones. Figure 6 is a particular version of a wireless communication adapter. Where Smith describes figure 6, it talks about another version of the wireless communication adapter. Why does figure 6 describe that as another version? Because it's completely different from what's in figure 5. The adapter in figure 5 is so the user can receive music from a high-fidelity system in his headphones and freely move around his or her house, and where that's described in the specification of the Smith patent, that's an A1178 and A1179, that refers to, quote, in another embodiment. That's how the description of that starts. Then figure 6 is talked about. That addresses sending music to a legacy high-fidelity equipment from portable legacy units like a portable CD player. Look at the full paragraph at page A1179. That describes it as, quote, in yet another embodiment. This is not a Swiss Army knife. These are different things. They're combining things that aren't properly combinable in an anticipation analysis. Finally, with regard to portability, Smith itself talks about that. It describes the home hi-fi unit as non-portable. That's an A1179 of Smith. And unless the court has any further questions for me, I will give back the remainder of my time. Thank you. Thank you. Mr. Castanhas will take the case under advisement.